In the Matter of JOSEPH C. BANCROFT, Petitioner, against COURT OF SPECIAL SESSIONS OF THE CITY OF NEW YORK et al., Respondents.

Supreme Court, Special Term, New York County, December 19, 1950.

*Lombardo & Pickard* for petitioner.

*John P. McGrath, Corporation Counsel (Saul Moskoff* and *Sidney B. Schatkin* of counsel), for respondents.

AURELIO, J. This is a proceeding pursuant to article 78 of the Civil Practice Act for an order, in the nature of a writ of prohibition, enjoining respondents from prosecuting a certain paternity proceeding in the Court of Special Sessions, New York County.

Petitioner, Joseph C. Bancroft, is and ever since prior to the month of May, 1948, has been a resident of Chautauqua County. In the spring of 1948, one Mrs. Dorris P. Furst, then pregnant, claimed petitioner was father of the child to be born. On May 13, 1948, a compromise agreement was made purportedly pursuant to section 121 of the Domestic Relations Law. That section, which is substantially identical with section 63 of the New York City Criminal Courts Act, provides:

"1. An agreement or compromise made by the mother or child or by some authorized person on their behalf with the father concerning the support and education of the child shall be binding upon the mother and child only when the court having jurisdiction to compel support and education of the

child shall have determined that adequate provision is fully secured by payment or otherwise and has approved said agreement or compromise. The approval of the court shall not be required for an agreement or compromise made by a duly constituted official of a city under specific power heretofore granted by special act of the legislature applicable only to such city.

" 2. No agreement or compromise under this section shall be approved by the court until notice and opportunity to be heard has been given to the public welfare official of the county, city or town where the mother resides or the child is found.

" 3. The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support and education of the child.''

Notice of the application was given to the Welfare Department of Chautauqua County where the parties then resided. Upon receiving the required consent from the Welfare Department an order was made on May 21, 1948, by the County Court of Chautauqua County, approving the compromise agreement. It should be noted at this point that no filiation proceeding was instituted or pending at the time of the entry of the compromise order, and petitioner did not then and does not now admit the charge.

Petitioner performed his obligations under the compromise agreement. Mrs. Furst after accepting some of the benefits refused the rest. After the birth of the child, on the mother's consent, Amos S. Basel, an attorney, applied to the County Court of Chautauqua County to be appointed guardian ad litem of the infant.

Thereafter Amos S. Basel, as guardian ad litem of the child, instituted a proceeding, before the County Court of the County of Chautauqua, to set aside its order of May 21, 1948, approving and confirming the compromise agreement of May 13, 1948. Petitioner cross-moved to dismiss the application. The County Judge dismissed the proceeding upon the ground that neither the infant nor her guardian ad litem was authorized under the statute to maintain a filiation proceeding and therefore they had no legal right to attack the order of compromise theretofore granted.

An appeal from the order of dismissal of the Chautauqua County Court was dismissed by the Appellate Division, Fourth Department, on the ground that the order was not appealable. (*Matter of Bancroft*, 276 App. Div. 485). However, the court

indicated that: " In arriving at this decision we have not left this child without an opportunity to have her day in court. The mother may institute the proceeding to set aside the order of May 21, 1948, and for the other relief asked for by appellant to the extent that the statute permits, if such application is seasonably made." (P. 490.)

The court also pertinently observed during the course of its opinion that: " The question of the jurisdiction of the court to make the order sought to be set aside has not been raised. The record does not show that any proceeding, pursuant to section 122 had been commenced when the mother and the respondent appeared before the county court and requested an order approving the agreement that they had executed. Such an order may be made ' when the court *having jurisdiction* to compel support and education of the child shall have determined that the adequate provision is fully secured by the payment or otherwise.' (Domestic Relations Law, § 121, italics supplied.) Subdivision 3 of section 122 gives jurisdiction to the County Court of Chautauqua County, but also provides ' The complaint shall be made to ' that court. Ordinarily, some pleading or process is required to institute a court proceeding. This section of the Domestic Relations Law seems to require a complaint. As the question of jurisdiction was not raised in the county court or on this appeal, we assume that such question is not before us." (Pp. 488–489.)

The mother and her child now live in the city of New York. On the basis that the infant is likely to become a public charge, the welfare commissioner has instituted a paternity proceeding against petitioner. Petitioner contends that the compromise order of the County Judge of Chautauqua County is a complete bar to such a prosecution.

On the record presented, a perusal of the sections involved, in the light of *Matter of Bancroft* (*supra*) leads me to conclude that respondents may proceed with the filiation proceeding involved.

Section 63 of the New York City Criminal Courts Act (Domestic Relations Law, § 121) provides that the complete performance of an approved compromise agreement shall bar other remedies for support of the mother and child. It does not bar the public welfare authorities from instituting a properly authorized proceeding.

Section 64 of the New York Criminal Courts Act (which is substantially identical with Domestic Relations Law, § 122)

in part provides: " 1. Proceedings to establish the paternity of the child and to compel support in accordance with this article may be brought by the mother, whether a minor or not, by the child's guardian or other person standing in parental relation or being the next of kin of the child, or by any authorized representative of an incorporated society doing charitable or philanthropic work, or if the mother or child is or is likely to become a public charge, by the department of public welfare in the city of New York. Such proceedings may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been acknowledged by the father in writing or by furnishing of support. *Provided, however, that the department of public welfare of the city of New York shall be empowered to bring suit in behalf of any child under the age of sixteen who is, or is liable to be a public charge.* Proceedings may be instituted if the mother or child resides or is found in the city of New York, or if the putative father resides or is found in the city of New York. The fact that the child was born outside of the state of New York shall not be a bar to instituting proceedings against the putative father in the city of New York if he resides or is found therein, or if the mother resides or the child is found therein. Any such proceeding may be tried in any county within the city of New York irrespective of where the proceedings were commenced."

I am of the opinion that this section gives to the public welfare authorities the independent right to bring a proceeding such as is now pending in the Court of Special Sessions in this matter whenever an infant under the age of sixteen years is or is liable to be a public charge. To hold otherwise would permit the foisting of illegitimate offspring on the public when their parents are financially able to provide for them. This would be contrary to the public policy of this State. Moreover, it is even questionable whether the Chautauqua County Court had jurisdiction to enter the order of May 21, 1948, approving the compromise agreement of May 13, 1948. The application for a writ of prohibition is denied.